IN THE FEDERAL DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



| | |
|---|---|
| DAVID F. LIGON, III ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 3:10CV151 |
| ) | |
| COUNTY OF GOOCHLAND, VIRGINIA ) | |
| ) | |
| Serve: Norman Sales ) | |
| County Attorney ) | |
| 1800 Sandy Hook Road ) | |
| Goochland, VA 23063 ) | |
| (County of Goochland) ) | |
| ) | |
| And ) | |
| ) | |
| CECIL YOUNGBLOOD ) | |
| ) | |
| Serve: 2938 River Road West ) | |
| Bldg. J ) | |
| Goochland, VA 23063 ) | |
| (County of Goochland) ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, David F. Ligon, III ("Ligon" or "Plaintiff") by and through his counsel, who hereby brings this cause of action under 42 U.S.C. § 1983 against the Defendants the County of Goochland and Cecil Youngblood and further states as follows:

1

## I. PARTIES

1. The Plaintiff David F. Ligon, III is a citizen of the Commonwealth of Virginia and a resident of the County of Goochland, Virginia and is a former employee of Goochland County's Building and Grounds Department.

2. The Defendant Goochland County is a political subdivision of the Commonwealth of Virginia and is Ligon's former employer.

3. The Defendant Cecil Youngblood is an individual and a resident of Goochland County, Virginia and is an employee of Goochland County and is Ligon's former supervisor in the Building and Grounds Department.

## II. JURISDICTION AND VENUE

4. The Federal District Court for the Eastern District of Virginia, Richmond Division, has personal jurisdiction over the parties, and all pertinent events described in this Complaint, as they occurred in the Richmond Division, pursuant to Local Rule 3(B)(4).

5. Under 28 U.S.C. § 1331, the Federal District Court for the Eastern District of Virginia has federal question jurisdiction concerning claims made pursuant to 42 U.S.C. § 1983.

6. Under the general venue provisions of 28 U.S.C. § 1391(b), the Federal District Court for the Eastern District of Virginia is a proper venue for a complaint made pursuant to 42 U.S.C. § 1983.

## III. FACTS

7. The County of Goochland, Virginia hired Ligon on or about August 20, 2007 as a Labor III and/or IV in the Buildings and Grounds Department under the direct supervision of Youngblood.

8. Youngblood's first performance evaluation of Ligon was on December 19, 2007, and he rated Ligon as a 3 (Meets Standards) in all 12 of his evaluated areas and noted in the action plan that Ligon was "learning well". Youngblood commented in the overall evaluation "after 4 months has good potential" and recommend Ligon for a merit increase.

9. During the course of his employment Ligon became increasingly concerned with what he considered to be Youngblood's misuse/abuse of County time, personnel, property, and funds for Youngblood's personal benefit, specifically, but not limited to, the following:

a. Youngblood worked on and/or allowed and/or ordered other County employees to work on his personal Chevy Suburban by replacing brake pads on the vehicle during County time and on County property;

b. Youngblood purchased equipment for use by the County and paid for with County funds, but the equipment ended up in his personal possession and for his personal use, including lawn trimmers, blowers, pole saws, combo tools, and attachments, and log tongs;

c. Youngblood had County employee Larry Hicks work on Youngblood's lawn tractor and allowed Hicks to work on his own equipment and that of others during County time and on County property and using County equipment and/or materials;

d. Youngblood allowed Hicks to work on Hicks's house's roof on County time to replace rotten wood and shingles. Youngblood told your plaintiff and two other County employees to assist Youngblood in picking up and cleaning the roof debris at Hicks's home while working on County time and then transport the debris to the local dump using a County vehicle;

e. Youngblood allowed Hicks to take extensive time off for what was believed to be hunting season, allowed Hicks to do his personal food shopping during County time, allowed

Hicks to store on County property discarded goods and equipment that Hicks had collected for his own use and to work on them on County time, allowed Hicks to work on his personal vehicle and the vehicles of others on County time and on County property, and allowed Hicks to work on his HVAC business during County time.

10. On Friday February 22, 2008 and during his lunch break, Ligon went to the County administrative offices to find someone to discuss his concerns regarding Youngblood's misuse/abuse of County time, property, personnel, and funds. While there Ligon became uncomfortable in approaching anyone in the County Attorney's office, Accounts Payable, or the Administration. Ligon finally found a County official he knew and asked in general terms where he should go with reporting his concerns. As a result Ligon approached Goochland Commonwealth Attorney Claiborne Stokes shortly thereafter on the same date and asked Stokes if he could speak with him and then confided in him some or all of the issues set forth above in Paragraphs 9(a) – 9(e) and what could be or should be done. Stokes directed Ligon to contact an officer in the Sheriff's Department regarding his concerns. Ligon said he would consider Stokes' suggestion to put his concerns in writing and about contacting the Sheriff's Department and would let Stokes know his decision on how he would proceed.

11. On or about Monday February 25, 2008 Ligon again approached Stokes and said he had put some of his concerns in writing and was ready to go forward to meet with personnel in the Sheriff's Department. Stokes then took Ligon to the Goochland County Sheriff's Department where he met with Investigator Jimmy Mann for about 45 minutes, Ligon told Mann some of what he thought were Youngblood's misuse/abuse of County taxpayer time, property, personnel, and funds, and at that time Ligon gave Mann some documents which outlined Ligon's concerns. Mann informed Ligon that the Sheriff's Department was going to investigate these concerns.

Ligon told Mann that he had additional information as to Youngblood's misuse and/or abuse of the County's time, property, personnel, and funds, such as Youngblood regularly borrowing County equipment and tools to do personal work at his house and Youngblood ordering County employees when they cut wood to load it on County trucks and deliver it to Youngblood's home for his personal use. On the next day Mann called Ligon back to his office to discuss the matter further and told Ligon that the Sheriff's Department would feel more comfortable if Ligon would take a lie detector test, and Ligon agreed that he would take the lie detector test. However, Mann never followed through with the lie detector test nor asked for any more written information or additional particulars from Ligon.

12. Ligon heard nothing more about the matter from anyone until he was aware that Mann was interviewing Youngblood in Youngblood's County office in the afternoon of March 10, 2008. After Mann had finished interviewing Youngblood, which interview began at approximately 3:00 p.m., Youngblood called Ligon back to his office at about 4:10 p.m. and yelled at him in a very aggressive manner and said that he had just spent 45 minutes being interviewed by the investigator (Mann) and that he was reading some document that Ligon had given Mann, and Youngblood told Ligon he had some nerve doing that. Youngblood then handed Ligon a critical work memo dated March 10, 2008 and initialed by Youngblood. The memo referenced Ligon's alleged job search and his alleged negative attitude towards his fellow employees and made reference to employees not being allowed to carry weapons at work, all of which were false and/or irrelevant as it related to Ligon and were designed to intimidate and harass Ligon. The work memo was copied to Linda Price who works in and is the head of Goochland County's Human Resource/Risk Management Department (*See* Exhibit A).

5

13. Thereafter Ligon tried to call Mann at his office, but not having his calls returned, went to Mann's office and complained to Mann about revealing Ligon's identity to Youngblood and expressed his fear of being fired.

14. On March 11, 2008 Ligon came to work and, beginning at sometime between 9:30 a.m. to 10:00 a.m., noticed that he could not use his County-issued identification badge/access card. Shortly thereafter Youngblood radioed Ligon to report to Youngblood's office at 11:00 a.m. On his way to Youngblood's office Ligon stopped and reported to Claiborne Stokes that Mann's investigation had been botched, as Mann had revealed Ligon's identity to Youngblood and that Ligon had not been protected for reporting the information to Mann and now feared being fired.

15. Ligon then reported to Youngblood who immediately terminated Ligon's employment by letter of the same date "due to unsatisfactory job performance which includes disruptive behavior and insubordination within the probationary period." This letter was copied to Price and possibly others (*See* Exhibit B).

16. Ligon tried to file a grievance about his termination, but Linda Price told him he could not because he was still considered a probationary employee.

## IV. CAUSE OF ACTION

17. The Plaintiff hereby repeats and incorporates by reference Paragraphs 1-16.

18. The Defendants terminated the Plaintiff from his job with the Buildings and Grounds Department of the County of Goochland because the Plaintiff personally exercised his right to free speech under the First Amendment to the Constitution of the United States, not in the course of his employment or pursuant to any of his stated job duties, in reporting a matter of significant public concern to persons outside of the Plaintiff's department in the County,

specifically that Youngblood was using County time, property, personnel, equipment, and funds for his sole personal benefit.

19. The Defendants terminated the Plaintiff from his employment with the Buildings and Grounds Department of the County of Goochland in willful and wanton violation of and with reckless and/or deliberate indifference to the Plaintiff's right to free speech under the First Amendment.

20. As a direct and proximate result of the Defendants' violation of the Plaintiff's First Amendment rights, the Plaintiff has sustained a loss of employment, a loss of wages and benefits, impairment of his future earning capacity, embarrassment, humiliation, mental and emotional anguish, and public ridicule.

WHEREFORE, the Plaintiff David F. Ligon, III respectfully requests this Court to enter judgment in his favor against the Defendant(s) in the following respects:

1. Judgment jointly and severally against the each of the Defendants for compensatory damages in the amount of $2.0 million.

2. Judgment against the individual Defendant Cecil Youngblood for punitive damages in the amount of $1.0 million.

3. Judgment jointly and severally against each of the Defendants for all costs and attorney's fees the Plaintiff incurred in prosecuting this action, as provided under 42 U.S.C. § 1988.

4. Any and all other compensation or relief that this Court deems just and due.

5. Pursuant to FRCP 38, a trial by jury is hereby requested.

Respectfully submitted,

DAVID F. LIGON, III

By: _____
Counsel

James B. Thorsen, Esquire (VSB#18113)
Marchant, Thorsen, Honey, Baldwin & Meyer, LLP
5600 Grove Ave.
Richmond, VA 23226
Phone: 804-285-3888
Fax:    804-285-7779
Email: jim@mthblaw.com

Counsel for the Plaintiff David F. Ligon, III